UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAWN HAGERTY, | : |
| Plaintiff | : CIVIL ACTION NO. 3:18-1973 |
| v. | : (JUDGE MANNION) |
| ROBERT SMITH, *et al.*, | : |
| Defendants | : |

**MEMORANDUM**

**I. BACKGROUND**

Plaintiff, Dawn Hagerty, an inmate confined at the State Correctional Institution, Muncy, Pennsylvania, ("SCI-Muncy"), filed the above caption civil rights action pursuant to 42 U.S.C. §1983. (Doc. 1). The action proceeds via an amended complaint. (Doc. 33). The named Defendants are the following SCI-Muncy employees: Superintendent Robert Smith, Security Captain S. Waltmen, Lieutenant Jennifer Beuchat and Dr. Robert Sena[1]. Id.

Presently before the Court is a motion to dismiss, filed on behalf of Defendants Robert Smith and Captain S. Waltman. (Doc. 34). The motion is

---

[1] Upon consideration of Plaintiff's failure to provide an accurate address for Defendant, Dr. Robert Sena, so that timely service may be effectuated, this Defendant will be dismissed from the above captioned action pursuant to F.R.C.P. 4(m).

fully briefed and, for the reasons that follow, the Court will grant Defendants' motion to dismiss.

## II. ALLEGATIONS IN AMENDED COMPLAINT

Plaintiff states that on July 17, 2017, she "had a seizure in common room" and "Lt. Beuchat and numerous staff brought camra (sic)." (Doc. 33, Amended Complaint). Plaintiff claims that "when [she] came out of seizure [she] had boot prints on socks." Id. She claims that an "investigation confirmed it was Lt. Beuchat" and that he "did unnecessary force." Id.

Plaintiff further alleges that "Dr. Robert Sena "constantly retaliating because of suit and continue[s] to cut [her] off [her] Phyc (sic) meds." Id. Plaintiff claims that she is "a 'D' Code which is serverley (sic) mental ill." Id.

Finally, Plaintiff alleges that "Capt. Waltman ordered her a TV and another white shirt to sign a waiver of lawsuit."[2] Id.

For relief, Plaintiff seeks compensatory and punitive damages for violations of her Eighth and Fourteenth Amendment rights, as well as

---

[2] Plaintiff's original complaint sheds light on this allegation, in that Plaintiff indicates that after she filed a grievance, Defendant Waltman investigated Plaintiff's grievance, substantiated her claims and demoted Lt. Beuchat. (Doc. 1 at 4).

- 2 -

violations of the American with Disabilities Act ("ADA") and a State Created Danger Theory. Id.

### III. MOTION TO DISMISS

Fed.R.Civ.P. 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." Under Rule 12(b)(6), we must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009)(quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008)). While a complaint need only contain "a short and plain statement of the claim," Fed.R.Civ.P. 8(a)(2), and detailed factual allegations are not required, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662 (2009) (quoting Twombly, 550 U.S. at 556). "[L]abels and conclusions" are not enough, Twombly, 550 U.S. at 555, and a court "is not bound to accept as true a legal conclusion couched as a factual

allegation." Id. (quoted case omitted). Thus, "a judicial conspiracy claim must include at least a discernible factual basis to survive a Rule 12(b)(6) dismissal." Capogrosso v. The Supreme Court of New Jersey, 588 F.3d 180, 184 (3d Cir. 2009) (*per curiam*).

In resolving the motion to dismiss, we thus "conduct a two-part analysis." Fowler, supra, 578 F.3d at 210. First, we separate the factual elements from the legal elements and disregard the legal conclusions. Id. at 210-11. Second, we "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief"." Id. at 211 (quoted case omitted).

## IV. DISCUSSION

### A. Personal Involvement

In a 1983 civil rights action, the Plaintiff must prove the following two essential elements: (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct complained of deprived the Plaintiff of rights, privileges or immunities secured by the law or the Constitution of the United States. Parratt v. Taylor, 451 U.S. 527 (1981); Kost v. Kozakiewicz, 1 F.3d 176, 184 (3d Cir. 1993). Further, Section 1983 is not a source of substantive rights. Rather, it is a means to redress

violations of federal law by state actors. Gonzaga Univ. v. Doe, 536 U.S. 273, 284–85 (2002).

It is well established that personal liability under section 1983 cannot be imposed upon a state official based on a theory of *respondeat superior*. See, e.g., Rizzo v. Goode, 423 U.S. 362 (1976); Hampton v. Holmesburg Prison Officials, 1546 F.2d 1077, 1082 (3d Cir. 1976); Parratt, supra. It is also well settled in the Third Circuit that personal involvement of defendants in alleged constitutional deprivations is a requirement in a §1983 case and that a complaint must allege such personal involvement. Id. Each named defendant must be shown, through the complaint's allegations, to have been personally involved in the events or occurrences upon which Plaintiff's claims are based. Id. As the Court stated in Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1998):

> A defendant in a civil rights action must have personal involvement in the alleged wrongs.... [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity. (Citations omitted).

A civil rights complaint must state time, place, and responsible persons. Id. Courts have also held that an allegation seeking to impose liability on a defendant based on supervisory status, without more, will not subject the official to liability. See Rode, 845 F.2d at 1208.

Initially, the Court finds that Plaintiff's Eighth Amendment claims of excessive force against Defendants Smith and Waltman, should be dismissed because these Defendants are not alleged to have sufficient personal involvement in the alleged wrongdoing. As stated above, liability cannot be predicated in a §1983 action solely on the operation of *respondeat superior*. Evancho v. Fisher, 423 F.3d 347, 353 (3d. Cir. 2005). For the Plaintiff's claim to proceed successfully in the instant case, therefore, Plaintiff would have to establish each Defendant acted with a culpable state of mind to subject Plaintiff to cruel and unusual punishment, not merely that they knew she was being exposed to ETS, i.e., negligence. See Caldwell v. Luzerne County Corrections Facility Management Employees, 732 F.Supp.2d 458, 472 (M.D. Pa. 2010). Also, each named defendant must be shown, through the Amended Complaint's allegations, to have been personally involved in the events or occurrences upon which Plaintiff's claims are based. We find that there is no indication that Defendant, Superintendent Smith, outside of his supervisory role, ever had the required level of sufficient personal interaction with the Plaintiff. Id.; Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1998). There are no facts pled which would conceivably be considered acquiescence, as required by the cases cited above. Based upon an application of the above standards, Plaintiff has failed to satisfy the

personal involvement requirement standard of Rode with respect to Defendants Smith and Waltman, and they shall be dismissed.

### B. Plaintiff's Fourteenth Amendment Claim

Plaintiff alleges Defendant Waltman's investigation into her grievance and then offered her a waiver of release to sign, was in violation of her Fourteenth Amendment due process rights.

Lawful incarceration brings about necessary withdrawal or limitation of many privileges and rights. Jones v. North Carolina Prisoner's Labor Union, Inc., 433 U.S. 119, 125 (1977). Although prisoners do not shed all constitutional rights at the prison gate, access to prison grievance procedures is not a constitutionally mandated right. See Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) ("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner."); Hoover v. Watson, 886 F. Supp. 410, 418 (D. Del. 1995), aff'd, 74 F.3d 1226 (3d Cir. 1995) (holding that if a state elects to provide a grievance mechanism, violations of its procedures do not give rise to a §1983 claim). A prisoner's constitutional right to petition the government for redress of grievances is the right of access to the courts, "which is not compromised by the prison's refusal to entertain his grievance." Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991).

The Plaintiff's allegations against Defendant Waltman relate to the manner in which he handled his investigation into her grievance regarding the conduct of Defendant, Lt. Beuchat. The Plaintiff takes issue with the manner in which Defendant Waltman investigated the grievance and offered a waiver, asserting that her Fourteenth Amendment due process rights have been violated. However, if a state elects to provide prisoners with prison grievance procedures, violations of those procedures do not give rise to a due process violation. Massey, 259 F.3d at 647. Access to prison grievance procedures is not constitutionally mandated. Id. Accordingly, the Court will grant Defendant Waltman's motion to dismiss Plaintiff's Fourteenth Amendment claim against him.

### C. ADA Claim

Title II of the Americans With Disabilities Act ("ADA") provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. §12132, As used in Title II of the ADA, "public entity" is defined as: "(A) any State or local government; (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government; and (C) the National Railroad Passenger Corporation,

and any commuter authority (as defined in section 103(8) of the Rail Passenger Service Act [49 U.S.C.S. §24102(4) ] ).” 42 U.S.C. §12131(a). State prisons fall squarely within the statutory definition of "public entity" in Title II of the ADA. Pennsylvania Dep't of Corrections v. Yeskey, 524 U.S. 206, 210 (1998). However, the plain language of §12132 applies only to public entities not individuals. Yeskey v. Commonwealth, 76 F.Supp.2d 572, 575 (M.D.Pa. 1999) (holding that individuals are not liable under Title II because it prohibits discrimination in programs of a "public entity" or discrimination "by any such entity" and "public entity" is not defined in Title II to include individuals). None of the moving defendants qualify as a public entity. Therefore, the ADA is inapplicable, and this claim will be dismissed.

**D. State-Created Danger Claim**

Plaintiff asserts a "state-created danger" claim against all defendants, under the Fourteenth and Eighth Amendments. See generally Kneipp v. Tedder, 95 F.3d 1199, 1205 (3d Cir. 1996). Under the "state-created danger" theory, "liability may attach where the state acts to create or enhance a danger that deprives the plaintiff of his or her Fourteenth Amendment right to substantive due process." Morrow v. Balaski, 719 F.3d 160, 177 (3d Cir. 2013).

However, "if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." United States v. Lanier, 520 U.S. 259, 272 n.7 (1997); see also Betts v. New Castle Youth Dev. Ctr., 621 F.3d 249, 260 (3d Cir. 2010). Here, it appears that Plaintiff's state-created danger claim under substantive due process is "covered" by the Eighth Amendment's protection against cruel and unusual punishment that proscribes inmates from being incarcerated under conditions that pose a substantial risk of serious harm, which Plaintiff asserts against Defendants in her complaint. Thus, Plaintiff's Eighth and Fourteenth Amendment "state-created danger" claim will be dismissed *sua sponte*, in favor of proceeding on the specific Eighth and Fourteenth constitutional provisions.

## V. LEAVE TO AMEND

The Third Circuit has instructed that if a civil rights complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002).

Here, it is clear from the facts alleged in the *pro se* amended complaint that any attempt to file a second amend complaint against the moving Defendants would be futile. See Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004). Although the allegations may be scant, it is readily apparent that the gist of Plaintiff' complaint is the alleged excessive use of force by Defendant, Lt. Beuchat, a claim that will proceed. Thus, the Court will dismiss the Plaintiff's §1983 claims against moving Defendants Smith and Waltman, without leave to amend to file a second amended complaint.

## VI. CONCLUSION

For the foregoing reasons, the Court will grant, without leave to amend, the motion to dismiss, filed on behalf of Defendants, Superintendent Robert Smith, and Security Captain Waltman, for failure to state a claim. Defendant, Dr. Sena, will be dismissed from the above captioned action for failure to timely serve pursuant to F.R.C.P. 4(m).   A separate Order shall issue.

*s/ Malachy E. Mannion*
MALACHY E. MANNION
United States District Judge

**DATE: March 9, 2021**
18-1973-01